RECEIVED
2024 FEB 15 A 9:48
REY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

AMENDMENT AS MATTER OF COURSE

MD 1

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

DEWAYNE SCOTT CUNNINGHAM           )
———                                )
Full name and prison name of       )
Plaintiff(s)                       )
                                   )
v.                                 )   CIVIL ACTION NO. 2:23-cv-564-MHT-CSC
                                   )   (To be supplied by Clerk of U.S. District
COMM. JOHN HAMM: WARDEN            )   Court)
DAVID LAMAR: LT. CLEVON RANDOLPH;  )
ICS OFFICER WILLIE PARHAM: LT.     )
HARRISON; OFFICER JOHNSON; FICTIOUS)
PARTIES "a", "b" & "C"             )
                                   )
                                   )
Name of person(s) who violated your)
constitutional rights. (List the names)
of all the person.)                )

I.   PREVIOUS LAWSUITS
     A.   Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action? YES [X] No [ ]

     B.   Have you begun other lawsuits in state or federal court relating to your imprisonment?   YES [ ]   NO [X]

     C.   If your answer to A or B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

          1.   Parties to this previous lawsuit:

               Plaintiff(s) __Dewayne Scott Cunningham_____

               Defendant(s) __Officer Grier; Elmore County_____
               __Correctional Facility_____

          2.   Court (if federal court, name the district; if state court, name the county)
               __U.S. District Court for the Middle District of__
               __Alabama_____

3. Docket number __UNKNOWN__

4. Name of judge to whom case was assigned __UNKNOWN__

5. Disposition (for example: was the case dismissed? Was it appealed? Is it still pending?) __DENIED__

6. Approximate date of filing lawsuit __December 31, 2020__

7. Approximate date of disposition __April/May 2021__

II. PLACE OF PRESENT CONFINEMENT __Bullock County Correctional Facility 104 Bullock Drive- Union Springs, AL 36089__

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED __Bullock County Correctional Facility__

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

    NAME                                     ADDRESS

1. __ADOC Conn. John Hamm - 301 S. Ripley St. -Montgomery, AL 36130__

2. __Warden David Lamar - 104 Bullock Dr. Union Springs, AL 36089__

3. __Lt. Randolph, Clevon - 104 Bullock Dr. Union Springs, AL 36089__

4. __ICS Officer Willie Parham - 104 Bullock Dr.- Union Springs, AL__

5. __Lt. Harrison - 104 Bullock Dr. - Union Springs, AL 36089__

6. __Officer Johnson - 104 Bullock Dr. - Union Springs, AL 36089__

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED __July 7, 2023__

__The Named Defendants were corporately and severally, deliberately__

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: __The named Defendants were corporately and severally, deliberately indifferent to the insecure conditions__ at the Bullock County Correctional Facility and as a result of said indifference did fail to protect the Plaintiff from a

prenentable assault by another inmate

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)

Claims and supporting facts concerning each named defendant are attached hereto

GROUND TWO: see attached

SUPPORTING FACTS: see attached

GROUND THREE: see attached

SUPPORTING FACTS: see attached

VI. STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.

The Plaintiff is seeking monetary compensation for his painn, suffering, permanent disfigurement and mental anguish in the sum of two million dollars.

*Dewayne Scott Cunningham*
Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  2/12/24
(Date)

*Dewayne Scott Cunningham*
Signature of plaintiff(s)

## CLAIMS CONCERNING COMMISSIONER JOHN HAMM

John Hamm, Commissioner of the Alabama Department of Corrections (ADOC), while acting in both his personal and official capacities and while knowing or having reason to know, of the pervasive under staffing and logistical issues, throughout the ADOC, including, but not limited to the Bullock County Correctional Facility at 104 Bullock Drive - Union Springs, AL 36089 (BCCF), which have rendered the prison officials thereof, unable to address the near constant violence therein, and resulted in a general attitude of indifference amongst the prison officers and support staff at the BCCF, and knowing the risk of harm his actions posed to the health and safety of the inmates of the BCCF, including, but not limited to the Plaintiff. did act with deliberate indifference to said health and welfare and did thereby cause and/or contribute to the unprovoked assault an the Plaintiff and the injuries resulting therefrom, by:

1. failing to pursue effective measure to hire and retain qualified persons to sufficiently staff the prisons of the ADOC, including and specifically, the BCCF;
2. failing to adequately instruct, train and/or supervise, the prison officials under his authority, in the proper enforcement of the administrative rules, regulations and guidelines relating to the safety and security of prisoners in the custody of the ADOC, which enforcement, would have prevented the unprovoked assault on the Plaintiff and the injuries resulting therefrom;
3. failing to address the logistical issues at the BCCF, which issues 1) adversely affect inmate moral, leading to high levels of stress and anxiety, demonstrated in violent outbursts, 2) allow inmates to be in

direct authority immediate authority, in the proper enforcement of the ADOC's administrative rules, regulations and guidelines relating to the safety and security of the prisoners in the custody of the ADOC held in confinement at the BCCF, which enforcement would have prevented the unprovoked assault on the Plaintiff and the injuries resulting therefrom;

2. failing to address the logistical issues at the BCCF, which issues 1) adversely affect inmate moral, leading to high levels of stress and anxiety. leading to violent outbursts amongst inmates and staff, 2) allow inmates to be in unauthorized areas at unauthorized times, providing opportunities for preventable inmate-on-inmate violence, and 3) create and/or allow the creation of additional safety and security issues, which issues did cause and/or contribute to the unprovoked assault on the Plaintiff and the injuries resulting therefrom; and

3. failed to ensure that sufficient staff was scheduled and present to adequately supervise and/or assist inmates in need, in all essential areas and dorms, which failure directly contributed to and/or caused the unprovoked assault on the Plaintiff and the injuries resulting therefrom.

## CLAIMS CONCERNING WILLIE PARHAM

Willie Parham, Inmate Control Services and Senior Correctional Officer responsible for inmate housing assignments at the Bullock County Correctional Facility (BCCF), while acting in both his personal and official capacities and knowing or having reason to know of the pervasive under staffing and logistical issues at the BCCF, which have

rendered the prison officials thereof unable to address the near constant violence at the BCCF and resulted in a general attitude of indifference amongst the prison officers and support staff at the BCCF, and knowing the risk of harm his actions would pose to the health and safety of the inmates at the BCCF, including, but not limited to the Plaintiff, did act with deliberate indifference to said health and safety of said inmates, and did thereby cause and/or contribute to the unprovoked assault on the Plaintiff and the injuries resulting therefrom by:

1. failing to carry out his duties as the Inmate Control Services Officer, specifically, by failing to ensure that A. Jolly, the inmate who assaulted the Plaintiff and was known to have an extensive record of prison violence, was physically moved from I-Dorm side 2 to his assigned bed in E-Dorm, after executing the transfer in the computer system; and
2. failing to ensure that A. Jolly, along with the rest of the prison population at the BCCF, was issued a wristband indicating which dorm he was assigned to, when his housing assignment was changed, which duties, if properly performed would have prevented the unprovoked assault on the Plaintiff and the injuries resulting therefrom.

## CLAIMS CONCERNING CLEVON RANDOLPH

Clevon Randolpf, Correctional Lieutenant and Shift Commander at the Bullock County Correctional Facility (BCCF), while acting in both his personal and official capacities and while knowing or having reason to know or the pervasive under staffing and logistical issued at the BCCF, which have rendered the prison officials thereof unable to

supervising or otherwise monitoring the dorm (Doc 15 at 5) acting in both his personal official capacities and while knowing or having reason to know of the pervasive under staffing and logistical issues at the BCCF, which have rendered the prison officials thereof unable to address the near constant violence therein and caused a general attitude of indifference amongst the officers and support staff at the BCCF, and knowing the risk of harm his actions would pose to the health and safety of the inmates under his direct authority, including, but not limited to the Plaintiff, did act with deliberate indifference to said health and safety and cause and/or contribute to the unproviled assault and the injuries arising therefrom, by:

1. failing to instruct, train and/or supervise the officers and support staff under his direct authority, especially as concerns the enforcement of the ADOC's rules, regulations and guidelines relating to the discovery and the discipline of an inmate in an unauthorized area;
2. failing to personally enforce the ADOC's rules, regulations and guidelines concerning an inmate found to be in an unauthorized area; and
3. failing to ensure that the person assigned to the post supervising I-Dorm. specifically, the person assigned to "Housing Unit Floor E (ARA) (Doc 15:&) was at their assigned post, performing their assigned duties.

## CLAIMS CONCERNING OFFICER JOHNSON

Officer Johnson, a female officer who conducted a bed roster count,

while acting in both her personal and official capacities and knowing or having reason to know of the pervasive under staffing and logistical issues at the BCCF, which have rendered the prison officials thereof unable to address the near constant violence therein and resulted un a general attitude of indifference amongst the the prison officers and support staff at the BCCF, and knowing the risk of harm her actions posed to the health and safety of the residents of I-Dorm, including, but not limited to the Plaintiff, did act with deliberate indifference to said health and safety and cause and/or contribute to the unproviked assault on the Plaintiff and the injuries arising therefrom, by:

1. failing to act in accordance with the training she allegedly received and remove A. Jolly from I-Dorm and initiate disciplinary proceedings against him foe being in an unauthorized area, according to ADOC's rules, regulations and guidelines; and
2. failing to report the unauthorized presence of A. Jolly in I-Dorm to her supervisor at the time of the incident.

## CLAIMS CONCERNING FICTITIOUS PARTY "A"

Fictitious Party "A", whose name is unknown to the Plaintiff at this time, but who was assigned to "Housing Unit Floor E (ARA) on the duty rosterfor the date of the assault upon the Plaintiff, while acting in both their personal and their official capacities and knowing or having reason to know of the pervasive under staffing and logistical issues at BCCF, which have rendered the prison officials thereof

assault on the Plaintiff and the injuries therefrom, by:

1. failing to act in accordance with the training they allegedly received by removing A. Jolly from I-Dorm and initiating a disciplinary action against gun immediately upon their discovery that he was in an unauthorized area, in accordance with ADOC's rules, regulations, and guidelines; and

2. failing to report the unauthorized presence of A. Jolly in I-Dorm immediately to the shift supervisor.

## SUPPORTING FACTS

### ADOC IN GENERAL

The pervasive under staffing and logistical issues in the ADOC prisons in general is a well established fact, and which has been the subject of not only the local news, but state and national news as well, due to multiple ongoing suits against the ADOC for constitution violations. These news stories have included facts such as the Alabama prison overcrowding being at or near 200%, while the prison staffing is at or below 60%. Said stories have also, reported on the pervasive violence with facts being, such as the inmate-on inmate violence being five times the national average and the number of inmate deaths due to inmate-on-inmate violence assaults being over 260in 2023 alone. While the Plaintiff cannot confirm the accuracy of these numbers, because he is not privilege to the actual data on which these numbers would be based, the fact that this court itself has declared the conditions of the Alabama prisons to be unconstitutional is sufficient to note the general conditions concerning the ADOC.

## or BULLOCK SPECIFIC FACTS

The under staffing is so pervasive at the Bullock County Correctional Facility (BCCF) that a large percentage of its correctional officers are mandated to work multiple extra shifts each week and there is still an insufficient number of officers to cover all the duty posts. The Conditions at the BCCF have deteriorated to the point that it is rare that more than two or three days passes that at least one person is not stabbed or severely beaten and when these acts of violence occur, they usually occur when no officer is present in the dorm where it occurs or in the hallway outside the dorm. Inmates who perpetrate these acts of violence know that they will not have to wait long for the officer to leave the area and give them the opportunity they need to do what they intend to do. While the most unobserved dorms in the facility are "C" and "K" dorms, which have one officer to oversee seven housing areas, only four of which have windows looking into the hall where the officer is posted, "E" and "I" dorms are frequently unattended for hours at a time during the first shift. At night, there are rarely any officers posted in the hallway. Many times, not only are there no dorm officers or rovers attending to I-Dorm at night, there is no cube officer. The infrequency of officers in I-Dorm and the lack of observance of said officers when they do come is such that on at least two occasions inmates had died in I-Dorm and were dead for hours before discovered to be dead. The atmosphere and attitude of deliberate indifference at the BCCF has elevated to the point that inmates are frequently carried to the infirmary on the cart used to haul the ice coolers, due to either being beaten or stabbed or having overdosed, only to be returned to the dorm from which they came

within a short time, without so much as an incident report being filed.

Inmate-on-inmate is not the only violence at the BCCF though, the institutional records alone, can and should verify that many officers have been disciplined due to assaults on inmates, while many more officers have resigned in order to avoid the disciplinary actions, solely so they could still be employed by the state at another facility or return to the BCCF later, with a clear record.

## INCIDENT SPECIFIC FACTS

Inmate Andre Jolly, the inmate who perpetrated the unprovoked assault on the Plaintiff, was assigned to I-2 prior to being assigned to E1-35A, but was moved to E-Dorm due to an altercation with another inmate in I-2, instigated by inmate Jolly. His housing assignment was changed by Inmate Control Services (ICS) Officer and Senior Correctional Officer Willie Parham, whose duties include the changing of housing assignments in the computer and informing the officers of both the dorms, which the inmate is moving out of and the dorm that the prisoner is moving into of the change in housing assignments. In short, his job is not only to make the change in the computer, but to ensure that the change takes place in the physical, by informing the officers assigned to the dorms involved, or to otherwise ensure the change in housing assignments occurs, especially when the change results due to an altercation between two inmates.

In this case, inmate Jolly was informed of the change in housing assignment, but no officer supervised or otherwise ensured that inmate Jolly actually moved to the area to which he was assigned. The result was that inmate Jolly was allowed to move his property into I1-57A in

the the same dorm as the Plaintiff.

While inmate Jolly was staying on I1-57A unauthorized, there were no less than three "Bed Rosters" conducted, wherein officers are supposed to personally verify that each inmate is on their assigned bed, in their assigned dorm. One of these Bed Rosters was conducted by Officer Johnson, a female officer, who did confront inmate Jolly about being on the wrong bed in the wrong dorm, but did nothing further in regards to getting him moved to his assigned housing area, beyond making a notation on the bed roster form. The other two officers did the same as Officer Johnson, confronted inmate Jolly, made a notation on the roster form and left inmate Jolly where he was.

On July 7, 2023, the Plaintiff was in his assigned dorm, sitting on his assigned bed, where he had been for several minutes talking with another inmate, when he was approached by inmate Joll. When inmate Jolly approached, he had in his hand a bowl, which contained human feces and shaving powder, which Jolly had heated in the microwave. Inmate Jolly, without any provocation or known cause, did then throw the contents of the bowl at the Plaintiff, aiming for the Plaintiff's face in an apparent effort to blind the Plaintiff and then he began repeatedly stabbing the Plaintiff with an inmate made weapon. After being stabbed several times, the last of which penetrated through the Plaintiff's left hand, the Plaintiff was able to get the weapon from inmate Jolly. When the Plaintiff gained possession of the weapon, inmate Jolly retreated and the Plaintiff went to the door of the dorm to attempt to get out.

There was no officer present in the dorm during the assault and had not been one in the dorm for some time. There was no officer between E-Dorm and I-Dorm and it took what seemed like several minutes before Officer Williams, the cube officer, saw the Plaintiff and let him out.

The Plaintiff saw no officers on the hallway between I-Dorm and E-Dorm, nor any, officers between I-Dorm and the infirmary and was offered no assistance from any officer until he reached the infirmary.

Upon arrival at the infirmary, Officer Henry allowed the Plaintiff entrance to the infirmary without delay and the Plaintiff was treated for multiple stab wounds, by Nurse Practitioner K. Patterson and Nurse Dock. Correctional Lieutenant Baldwin and Captain Rogers, reported to the infirmary to investigate the incident, Correctional Lieutenant Clevon Randolph also reported to the infirmary.

While the Plaintiff was being treated in the infirmary, Officer K. Glover went to I-Dorm to investigate and determined that inmate Jolly was the perpetrator of the assault. He then, obtained the weapons used in the attack from Jolly, placed him under arrest and escorted him to the infirmary in handcuffs, to receive a body chart and be processed into the restricted housing unit.

After the Plaintiff's wounds were treated and a body chart was completed, the Plaintiff was released back to his assigned dorm. He was asked no further question about the incident and to his knowledge no further investigation was done. The Plaintiff has since the assault been unable to sleep and after seeing both his psychologist and the prison psychiatrist was placed on sleeping medications, which he still requires to be able to sleep.

The Plaintiff asserts that inmate Andre Jolly had an extensive history of prison violenc, including multiple assaults on other inmates without provocation, which the Plaintiff asserts should have disqualified inmate Jolly from, ever having been assigned to I-Dorm at

all, whereas, I-Dorm is specifically designated as the dorm wherein disabled and elderly prisoners, who are more vulnerable are housed. The Plaintiff further contends asserts that had the officers involved been properly instructed, trained and supervised, by those who are responsible for carrying out such duties and had the officers themselves performed the duties assigned to each of them, inmate Andre Jolly would have had no opportunity to assault the Plaintiff. Wherefore the Defendant's both corporately and severally, did cause and/or contribute to the unprovoked assault on the Plaintiff and the injuries resulting therefrom.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12 day of February, 2024, I heave filed a copy of the foregoing "Amended Complaint, with the Clerk of this Court and have also served a copy on the Attorney General, Steve Mar5shall, counsel for the Defendants at the OFFICE OF ATTORNEY GENERAL - 501 Washington Ave. _ Montgomery, AL 36130-0152, by depositing same in the prison mail system at the Bullock County Correctional Facility - 104 Bullock Drive- Union Springs, AL 36089, with sufficient postage to ensure the delivery thereof, pursuant to the "Mailbox Rule"

*Dewayne Scott Cunningham*

Dewayne Scott Cunningham
Plaintiff

AIS# 190108
Bullock Correctional Facility
P.O. Box 5107
Union Springs, AL 36089

Ricky
Bullock
P.O. Box 5107
Union Springs, AL 36089



United States District Court Middle District
One Church Street - B110
Montgomery, AL 36104-4018

Dewayne Cunningham AIS# 190108
Bullock County Correctional Facility I1-34
P.O. Box 5107
Union Springs, AL 36089





United States District Court Middle District
One Church Street - B110
Montgomery, AL 36104-4018